**DUFFIE v. BROOKLYN EDISON CO., Inc.**

No. 4386.

District Court, E. D. New York.

Jan. 30, 1931.

William Bohleber, of New York City (William Bohleber and Frederick Griswold, Jr., both of New York City, of counsel), for plaintiff.

Fred Gerlach, of Chicago, Ill. (Fred Gerlach, of Chicago, Ill., and Philipp, Sawyer, Rice & Kennedy, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit in equity in which the plaintiff seeks relief by injunction and damages for the alleged infringement by the defendant of United States patent No. 1,102,130, to George S. Bennett, for vacuum cleaner, issued June 30, 1914, on application filed May 22, 1909.

I find the facts as follows:

The plaintiff by mesne assignment is the owner of the patent in suit.

The defendant sold within this district certain vacuum cleaners manufactured by the Hamilton-Beach Manufacturing Company, of Racine, Wis.

The said cleaner manufactured by the Hamilton-Beach Manufacturing Company is licensed under the Clements reissue patent No. 15,627.

The patent in suit has never been adjudicated, but it was relied upon as an anticipation of the Clements invention in a suit brought in this district by Clements Manufacturing Company and Hoover Company v. Regina Corporation, and both in this court's opinion, by Moscowitz, District Judge, and in the Circuit Court of Appeals, by Circuit Judge A. N. Hand, 34 F.(2d) 931, the Clements reissue patent No. 15,627 was held valid over the patent in suit.

Neither of the parties to this action were parties to that suit, and those decisions are not controlling.

The defendant's cleaner is of a commercially successful construction, as is evidenced by the large number made since 1914.

The patent in suit is a "mere paper patent," and not one machine has been made for commercial use. The only machine ever made is the experimental one in evidence, Plaintiff's Exhibit 123.

The evidence shows that no concern ever adopted the Bennett construction of converter, notwithstanding the fact that the plain-

tiff started in 1915 the exploitation of the patent in suit, and succeeded in procuring a few licenses, some of which were repudiated, a sale to Frantz Premier Company, which was not completed, and a sale of a part interest in the patent to the Hoover Company, which was returned.

It is also to be noted that the plaintiff's exploitation of the patent in suit started after the commercially successful machines of the Clements reissue type went on the market; that all the licensees adopted the Clements coupling scheme and rejected Bennett's tubular valve; and that the Hoover Company, although licensed at one time under the patent in suit, never made a cleaner under that patent, but that its cleaner had the Clements coupling.

The plaintiff has not sustained his claim of commercial success, and therefore the patent in suit should be accorded only the consideration due a mere paper patent.

The only suits which have been brought for the alleged infringement of the patent in suit, except the one at bar, are those which have been brought against Hamilton-Beach Company, the manufacturer of the machine alleged to infringe in the action at bar.

From the plaintiff's testimony with reference to his call on the Hamilton-Beach Company, in 1914, I conclude he knew of those machines as early as the date of his call. In 1921, the Vacuum Specialty Manufacturing Company, to the use of John J. Duffie, brought suit against the Hamilton-Beach Company, which was dismissed on demurrer. In 1922, plaintiff in his own name brought a second suit against the Hamilton-Beach Company, which after depositions were taken was dismissed, and there is no provision in the order of dismissal that it was "without prejudice."

The present suit was not commenced until August 10, 1929, some fifteen years after it appears plaintiff first had knowledge of the manufacture of such machines by Hamilton-Beach Company, and then it was brought against a seller.

The first suit was not brought until about seven years after the patent was issued, and even if the second suit was dismissed by plaintiff at the request of the Hoover Company, no action was brought between 1922 and 1926, when it was returned to plaintiff, and he then waited about three years before commencing the suit at bar.

Plaintiff attempted to carry back the date of Bennett's invention of the patent in suit,

to the latter part of 1907, but the testimony of the witness called for that purpose, whose testimony as to discussions alleged to have been had with Bennett, the patentee of the patent in suit in the latter part of 1907, and with the plaintiff in about July 1908, given from recollection alone and without concrete contemporaneous corroborative evidence, is insufficient to carry the date of invention back to any date earlier than February, 1909, the date fixed by the plaintiff and the witness called on his behalf as that of the completion of the machine in evidence. This date is subsequent to the effective dates of United States patent No. 918,896 to Noe, application filed March 28, 1908; United States patent No. 941,347 to Markstein, application filed January 4, 1908; British patent No. 1567, of 1908, to Noe, accepted June 18, 1908; British patent No. 8712, of 1907, to Zimmer, accepted December 12, 1907; French patent No. 386,635, to Noe, published June 18, 1908. And therefore each of those patents is available as an anticipation. From an examination of the file wrapper of the patent in suit, it appears that patent No. 918,896 to Noe, as a reference against claims, on July 6, 1909, and the French patent No. 386,635 to Noe, were cited in the rejection of June 8, 1910, and Bennett, the patentee of the patent in suit, did not in his lifetime make any showing in the Patent Office that he made his invention before July, 1908.

If he had made his invention before that date, he could have made that showing when all his evidence was available, and his failure so to do is more impressive than testimony based on a recollection over twenty years later.

The acquiescence of the patentee of the patent in suit in the priority of these patents was a virtual abandonment of any date earlier than theirs, and prevents the plaintiff from relying on it now.

The suit at bar is based upon claims 3, 5, 6, 7, 8, and 9 of the patent in suit, No. 1,102,-130, which read as follows:

"3. A vacuum cleaner, comprising a casing, a fan revolubly mounted therein, said casing having an opening in axial alignment with said fan, a removable cover plate for the opening secured to the casing, a suction tool secured to and projecting below said plate, a frame secured to said casing, a motor carried by said frame and connected to said fan, and a handle operatively secured to the cleaner."

"5. A vacuum cleaner, comprising a casing, a fan revolubly mounted therein, said

casing having an opening in axial alignment with said fan, a cover plate extending over said opening and removably secured to said casing, said plate being provided with a tubular extension forming a recess or chamber in direct axial alignment with said fan and a separable closure member for said chamber, a suction tool carried by said plate, said tubular extension being provided with a port connecting said tool and said chamber, and a valve in said chamber controlling said port.

"6. In a vacuum cleaner, a fan casing having an inlet port and an exhaust port, a fan operative within the casing, a motor directly secured to said fan, means for supporting said motor in said casing, a removable plate secured to the inlet side of the casing, said plate being provided with a valve chamber in communication with said fan casing, a suction tool carried by said plate and communicating with said casing through said chamber, a tubular valve in said chamber for controlling the communication between the tool and the casing, and having a removable closure at the outer end of said chamber adapted to be removed when the valve is in a closed position to permit said valve to serve as an inlet pipe.

"7. In a vacuum cleaner, a fan casing, a fan rotatable within said casing, a motor mounted upon said casing, a suction tool secured to said casing and out of alignment with the axis of rotation of said fan and motor, a valve chamber intermediate said fan casing and said suction tool and in axial alignment with said fan and forming a communication therebetween, a tubular valve located in said chamber and controlling said means of communication, and a removable closure cap for said chamber adapted to be removed when the valve is in closed position.

"8. A vacuum cleaner, comprising a casing, a fan revolubly mounted therein, said casing having an opening in axial alignment with said fan, a cover plate extending over said opening and removably secured to said casing, said plate being provided with a tubular extension forming a recess or chamber and having a removable cap or closure and a suction tool carried by said plate communicating with said chamber.

"9. A vacuum cleaner, comprising a casing, a fan revolubly mounted therein, a motor secured to said casing, said casing having an opening in axial alignment with said fan, a suction tool carried by said casing and out of alignment with the axis of rotation of said fan, said casing having a tubular extension, said tool being in communication with the tubular extension, said extension being provided with an opening in substantial alignment with said fan, a removable closure for said opening, and means for closing the communication through said tool."

The patentee of the patent in suit in his specification says:

"This invention relates to a vacuum cleaner used for the purpose of taking up the dust from floors, and household furnishings of all kinds.

"An object of the invention is to produce a wheeled machine which may be operated over a floor without a hose tool for the purpose of picking up the dust from clear floors, while a hose may be attached to the machine for cleaning furniture, curtains or inaccessible places." Page 1, lines 10–20.

The following is an explanation of the patent in suit:

Fig. 6 of the patent in suit shows an extensible handle 8, attached to frame 1, which is attached to a fan casing 4, rigidly. The shaft of the motor passes through the rear of the fan casing 4, and has attached within the casing a revoluble or rotating fan of the ordinary centrifugal type. On the front of the fan casing is a floor nozzle structure. This has a plate 11, which is removably secured to the fan casing 4. The plate 11 has walls 11″ extending from it, which define a recess or chamber which is in axial alignment with the fan, and also in axial alignment with the motor and inlet port in the front of the fan casing 4. Leading from the floor nozzle, which is in close proximity to the floor, is a passage which leads up to the chamber, defined by the walls $11^1$, which is directly in the eye of the fan or directly in the center of the axis of rotation of the fan. With the parts in the condition shown in Fig. 6, the air flows from the mouth of the floor nozzle up the passage which is marked 18, up to the eye of the fan, is drawn from the fan, and thrown to the outer walls of the fan casing 4, and passes out of the opening 5 which is shown in Fig. 1, and so into the dirt bag or dust collector. The floor nozzle structure has a joint in the passage leading from the floor to the chamber in the eye of the fan, so that the end of the floor nozzle, in close proximity to the floor, can follow the inequalities of the carpet or floor covering. Within the walls $11^1$ is a tube 12, called in the patent an inlet pipe, which is covered by a cap marked 16. The rear part of the tube or inlet port 12 is cut away so as to form a valve or cutoff, and if it is desired to use the machine with a hose for off the floor work, the operator rotates

the valve approximately 180 degrees, the part that is not cut away will close off the passage leading from the mouth of the floor nozzle, and the cap 16, being taken off a hose, can be put over the inlet pipe 12, and the device used for cleaning walls or draperies, or things which are inaccessible to a floor machine. When so operated the fan sucks the air through the hose and inlet pipe, through the fan, and thus to the dust bag or collector.

A comparison of the defendant's device with the patent in suit is somewhat difficult, in that while the function of the two devices is the same, the details of the two devices are dissimilar.

The device of the patent in suit has the so-called front plate 11 with the valve chamber in it, the rotatable valve closed by a cap, and the extension to the front plate carrying a channel through the nipple or floor nozzle, or suction member. The defendant's device is much simpler so far as the corresponding parts are concerned, as it consists of nothing but a single nozzle, fastened directly onto the fan casing. The fact that both of them have removable caps adds nothing to patentable similarity, as the function of the cap is old and well known.

The main factor that operates to hold the nozzle of the device of the patent in suit on the floor is gravity, acting on the weight of the nozzle, which is not very heavy; therefore in order for the nozzle to remain stationary, relative to the swinging movement of the fan casing, the joint between the nozzle and the plate has to be quite loose so that there is practically no resistance to its movement.

If the joint is loose, dust and dirt that is sucked in through the nozzle will get into and clog the joint so that it will not function as contemplated by the patent.

In the device of the patent in suit the nozzle is down at the bottom of the front plate and connected to it by a passage, and in order to close that passage the rotating valve that is turned 180 degrees had to be employed, as without that valve it would be impossible to operate the device as an off the floor machine.

There is no valve, valve seat, or chamber in the defendant's machine. The hose coupling member in defendant's device is not a valve, but a tube inserted to cut off the floor nozzle and suction chamber, and has no function other than that of a coupling member; while in the device of the patent in suit, the rotating valve is at all times a part of the connection between the nozzle and pump chamber.

The actual opening in the fan casing of the patent in suit is so large that without the reduction caused by the so-called front plate, there would be practically no effect from the fan, and therefore it is an actual factor in making the aperture for the eye of the fan.

In the defendant's device, on the contrary, that aperture is never an aperture for the air, as it is closed when the device is used on the floor, and no air can enter, and if not closed the device would be inoperative. When it is used for off the floor work while the aperture is still there, the air does not enter it except as it passes through the pipe constituting the hose coupling.

There is no cover plate in the defendant's device that performs the function of the cover plate in the patent in suit, as that is taken care of by a radically different nozzle construction.

There is another difference which has no direct action on the convertible feature, but is partially the cause of the complicated structure for conversion of the patent in suit, which instead of following the usual custom of commercial machines, as does the defendant's device, to get the swiveling effect, by having the handle swivel on the machine, so it can rise and fall, made the handle rigid with the motor frame casing, and was compelled to interpose a swivel joint between the fan casing and the floor nozzle or suction member.

No novelty is imported into the cleaner of the patent in suit by its size.

The patent in suit is not limited and does not specify any particular size.

The main factors in making a small cleaner possible are the size and efficiency of the fan and motor which are used, and the patentee of the patent in suit contributed nothing to the art in that respect.

Every cleaner of the prior art is portable, intended for household use, and the patents so specify.

I am convinced that the labor of household workers was not lightened by the reduction of the size of the cleaner, as in the patent in suit, for the reason that the worker with the cleaner of the patent in suit must continually bear the weight of the major portion of the cleaner, because practically all the weight is in back of the rollers, while in defendant's cleaner, as well as in every cleaner of the prior art (except the McGaffey patent which Bennett follows), the weight of the entire machine is carried by the wheels,

and the worker merely raises and lowers the handle.

The defendant offered in evidence the following:

United States patent No. 91,145, to McGaffey, for improved sweeping machine, dated June 8, 1869. This was offered only to show the state of the art and not as an anticipation. It shows a vacuum cleaner for household use, the old-time sweeping machine which preceded the general adoption of the electric motor on vacuum cleaners. It has a nozzle c pivoted to a duct leading from the eye of the fan and mounted on a pair of rollers. The fan structure and gearing are disposed rearwardly of the pivoted nozzle, so that the operator must bear their weight at all times. Of course, no electric motor and no converter is shown, but the patentee of the patent in suit was not the first to use an electric motor on one side of the fan casing, nor was he a pioneer in the use of converters.

United States patent No. 1,183,952, to Chapman, for pneumatic sweeper and renovator, dated May 23, 1916, on application filed October 31, 1905, shows a converter, a removable plate at the right side of Fig. 3, fitting against the side of and communicating with the eye of the fan, and a tubular extension which is connected by a hose 20 to the suction nozzle 32 (Fig. 7), containing a brush 17. For off the floor work, all that is required is for the operator to remove the lower end of the hose from the suction nozzle and connect it to a hose 20ᵃ. The converter has no valve, the hose connection leads directly to the cover plate. Suction in the nozzle is automatically cut off by uncoupling of hose 20 from the nozzle, and the conversion for off the floor work is completed by the coupling of the wall nozzle to hose 20.

United States patent No. 1,185,354, to Skinner, for pneumatic carpet sweeper, dated May 30, 1916, on application filed March 13, 1906, relates to improvements in pneumatic renovators, and especially to improvements in that type of apparatus disclosed in the Chapman patent No. 1,183,952, and shows a cleaner comprising a fan 6, a direct connected electric motor 3, a floor nozzle 14, a plate having a tubular extension coaxial with the eye of the fan, and a conduit 15, from the floor nozzle, and a converter including valves 15ᶜ, 15ᵇ, for cutting off the floor nozzle and closing the inlet connection for a hose for off the floor work. The entire structure is mounted on a wheeled frame 2 and moved about by a handle 1. In the structure of the patent there is no pivot between the floor nozzle and the conduit. The operator does not have to bear the weight of the motor and fan, as in the patent in suit, as it is curved on the wheeled frame. To operate the converter it is not necessary, as in the patent in suit, to remove a cap from the end of the valve, rotate the valve, and couple a hose onto the valve, but all that is required on this structure is to apply the hose to the nipple 15ᵃ and turn valves 15ᶜ and 15ᵇ.

French patent No. 362,298, to Montepreux, for cleaning devices, published June 14, 1906, shows no floor nozzle as distinguished from a hose tool, and therefore there is no converter structure, and no further consideration need be given to this patent.

French patent No. 365,572, to Figueras, for domestic cleaning apparatus, published September, 11, 1906, shows a small portable cleaner comprising an electric motor 1; a direct connected fan 3; a fan casing formed in two parts 4 and 5; a wheeled frame 19; a tubular extension 13 on the central suction opening 6 of the fan casing, and coaxial with the fan and forming the eye or inlet of the fan; a floor nozzle 14, screw-threaded to extension 13 and removable therefrom; brushes 16 driven from the fan shaft 18; and a handle 20 for moving the cleaner over the floor.

The device 14 is a sort of bell carrying in its interior a rotatable shaft 15 on which brushes 16 are mounted, and this shaft receives its movement by means of an appropriate transmission 17, controlled by a shaft 18, positioned axially of the fan and fixed to the movable part of the latter.

This device is particularly suitable for cleaning carpets.

For off the floor work, the support 14 is removed and a flexible hose of suitable length, terminating in a spout, provided with fixed brushes, is positioned on the tube 13, which is coaxial with the fan, and the air from the hose will be conducted directly to the eye of the fan.

There is no valve in the converter structure of this patent.

United States patent No. 918,894 to Noe, for fan blower, dated April 20, 1909.

British patent No. 1567, A. D. 1908, to Noe, for an improved pneumatic renovator or carpet sweeper, accepted June 18, 1908.

French patent No. 386,635, to Noe, for dust suction device, published June 18, 1908.

In the British and French patents the same complete cleaner is shown, while in the United States patent only the operating mechanism and one form of converter are

shown, but it will be sufficient if we consider them collectively, or as a single structure.

The United States patent (Figs. 1 and 2) more clearly shows the operating mechanism which includes a fan casing formed of sections 1, 2; a fan 43 in the casing; an electric motor 14 having a shaft 17, to which the fan is fixed; an eye 7, formed in the casing section 1, coaxial with the fan; a plate or casting 10, having a tubular portion coaxial with the eye; and an extension forming a conduit 22, leading from a nozzle 24 to the tubular portion of the plate.

As shown in the British and French patents, this entire structure is mounted on a frame 1, and a handle 6 is provided so the cleaner can be pushed over the floor.

Each of these patents shows the same form of converter, which consists of a three-way valve for controlling the suction from the floor nozzle, or from a nipple adapted for connection to a hose for off the floor work. For floor work, this valve is set to open the duct leading from the floor nozzle to the chamber in plate 10. For off the floor work, the valve is set to cut off the floor nozzle and into the position shown in Fig. 8 of the United States patent, and the hose is connected to inlet nipple 24, and the air is sucked into the eye of the fan.

United States patent No. 918,896, to Noe, for pneumatic renovator, dated April 20, 1909, shows substantially the same type of cleaner as the other Noe patents, but a different converter construction, which includes a tubular valve 14, provided to cut off suction from the floor nozzle, and an auxiliary intake 17 normally closed by a cap 18, adapted to be connected to a hose for off the floor work.

British patent No. 8712, A. D. 1907, to Zimmer, for improvements in and relating to vacuum sweeping and dusting appliances, accepted December 12, 1907, shows a slide valve for cutting off suction from the floor nozzle. It exhibits a vacuum cleaner with a fan casing C (Figs. 2 and 5); a fan F in the casing; a tubular axial extension 77 on the outer side wall of the casing; a duct K leading from the tubular extension to the suction chamber at the front of the cleaner; a removable screw plug 79 at the outer end of the tubular extension, for the purpose of connecting a hose from a wall-cleaner nozzle 105 (Fig. 1) to the tubular extension. A valve 81 in the duct K is adapted to cut off communication between the fan inlet and the suction nozzle when the wall cleaning device is connected to the tubular extension.

There is clearly disclosed in the patent a tubular axial extension constituting the air inlet to the fan, and a removable closure at the outer end of the tubular extension which is provided for connection with the hose of an attachment.

If desired, communication between the suction fan and the brushes may be disconnected and communication made between the fan and a device for cleaning walls, pictures, or like objects. To accomplish this it is only necessary to insert a damper or the like in the suction pipe and connect the hose of the wall cleaning device to the inlet of the fan.

It is wholly immaterial, so far as the off the floor connection is concerned, that the patent shows hand-operated gearing for driving the fan, because the connection would operate the same with any driving means, and electric motors for operating the fan were common expedients in the art.

United States patent No. 941,347, to Markstein, for pneumatic sweeper, dated November 23, 1909, shows a portable vacuum cleaner, motor driven, in Fig. 8, and hand-operated in Fig. 1.

The fan casing 22 (Fig. 4) is provided with a removable front plate 20, and a tubular extension 12, in the form of a pipe coaxial with the fan. A floor nozzle 10 is fixed to the lower end of extension pipe 12. A T-fitting 13 with a nipple for a hose coupler surrounds pipe 12, and this is normally closed by a cap 18.

For cleaning walls, a nozzle is put on a flexible hose and the cap 18 is removed and the nozzle 10 covered or plugged, or the pipe 12 closed by a cock, or in any suitable manner.

The cleaner disclosed is convertible with a fan directly driven from the motor, a removable front plate having a tube or extension, an auxiliary inlet for a hose connection, a removable cap for the inlet, and means (plug or valve described) for cutting off the suction from the floor nozzle.

For both floor and off the floor work, the air enters the fan casing through the coaxial extension on the front plate.

United States patent No. 928,456, to Johnson, for sweeping machine, dated July 20, 1909. This was offered only to show the state of the art and not as an anticipation; shows a portable floor cleaner, which is convertible for off the floor work. The converter disclosed is of the valveless type, and consists of a removable plate 36, adapted to close the bottom of the casing which serves as a floor nozzle, and has a tubular extension

for connection to a hose 40, for off the floor work. In both uses the air flow is direct to the eye of the fan, and in the direction of its axis.

An examination of the prior art shows that if there be any novelty in the patent in suit, it must be in the converter.

The prior art shows that portable vacuum cleaners for household use were old in the art, and that mere size is not dealt with in any of the patents of the prior art, nor in the patent in suit.

The patents of the prior art range themselves in two lines: First, those in which a valve is found in the converter; second, those in which the converter is valveless.

In the first class are found patent No. 1,185,534 to Skinner; No. 918,896 to Noe; No. 918,894 to Noe; and No. 941,347 to Markstein.

In the second class are found patent No. 1,183,952 to Chapman; No. 928,456 to Johnson; and French patent No. 365,572 to Figueras.

The patent in suit is found in the first class, and the device of the defendant is valveless, as are the patents shown in the second class.

The same general elements are found in the patents of the prior art and in the patent in suit, the mode of operation is the same, and there is no new result; therefore it seems to me that the novelty resides in matters of detail.

There is nothing distinctive in the patent in suit in dispensing with the use of tools for conversion, as this is found in patent No. 1,185,534 to Skinner; No. 1,183,954 to Chapman; No. 918,896 to Noe; No. 365,572 to Figueras; No. 918,984 to Noe; and British patent No. 8712, of 1907, to Zimmer.

No consideration need be given to the spacing of the nozzle from the floor for the admission of air as in the patent in suit, as claim 1, the only claim directed to the knife, is not in suit.

No advantage was achieved in the patent in suit because the floor nozzle was carried directly on the fan casing; on the contrary, even though the cleaner of the patent in suit may operate successfully for a short time, I cannot escape the conviction that with sustained use, the joint between the nozzle and the plate, which must be loose, will be clogged up with dust and dirt that is sucked in through the nozzle, and prevent it from functioning in the manner contemplated in the patent.

The removable cover plate over the axial opening in the fan casing of the patent in suit is not new, as this feature is shown in the patents to Noe, United States patent No. 918,894; British patent No. 1567, of 1908, and French patent No. 386,635; United States patent to Markstein No. 941,347; United States patent to Chapman No. 1,183,-952; and United States patent to Skinner, No. 1,185,354.

An axial tubular extension through which air is drawn into the center of the fan casing from the auxiliary nozzle on the hose was not new as it was shown in British patent No. 8712, of 1907, to Zimmer; French patent No. 365,572 to Figueras; United States patent No. 941,347 to Markstein; and United States patent No. 928,456 to Johnson. And therefore the patent in suit, to distinguish from the prior art, must have recourse to the tubular valve shown therein forming a permanent part of the machine and seated in a tubular extension, seat, or valve chamber, so that the valve will in one of its positions permit suction to be applied to the floor nozzle, and in another carry air through the tubular extension to the fan.

The patent in suit was not the first to exhibit the dual function of the valve as an inlet for air from the hose and as a cut-off from the floor nozzle. In one form or another this was shown in United States patent No. 1,183,954 to Chapman; United States patent No. 918,894 to Noe; and French patent No. 365,572 to Figueras.

The patent in suit shows a tubular rotary valve with a cap on the outer end of the valve, and a cylindrical seat for the valve in the tubular extension of the front plate, functioning to cut off the nozzle from the fan when rotated to one position, and remaining at all times a permanent part of the machine.

I can find no broader novelty than the details of the patent in suit. To construe the claims in suit more broadly would expose them to anticipation.

Only as thus limited can claims 5, 6, 7, and 9 of the patent in suit be held valid.

Claims 3 and 8 do not specify the converter construction in which alone novelty is found, and as all the elements of claim 3 are present in United States patent No. 941,347 to Markstein, and patent No. 1,183,954 to Chapman, which were not cited by the Patent Office, and as all the elements of claim 8 are present in the patent No. 941,347 to Markstein, patent No. 918,896 to Noe, and patent No. 918,894 to Noe, these two claims are in-

valid unless they be construed as claiming the converter as described in detail in the patent in suit and as hereinbefore limited. The range of equivalents as to any claim in suit cannot be broad, but only broad enough to protect the invention of the patent in suit.

The defendant follows the reissue patent No. 15,627 to Clements, for improvement in vacuum cleaners, dated June 12, 1923, to which the patent in suit was pleaded as an anticipation, in the suit in this district by Clements Manufacturing Company and Hoover Co. v. Regina Corporation, referred to earlier in this opinion, and now after all the evidence has been considered in the action at bar, I find nothing to warrant me in arriving at a different conclusion as to the patent in suit than was expressed in those opinions.

In defendant's cleaner the handle is pivoted to the motor housing, and the floor nozzle casing and motor are all rigidly secured together and mounted on fore and aft wheels.

The pivotal connection between the floor nozzle and the plate in which the tubular valve is mounted, shown in the patent in suit, is not found in defendant's cleaner.

In the converter of defendant's cleaner, there can be found no valve for alternately connecting the suction of the fan to the floor nozzle or to a hose for off the floor work.

The defendant's cleaner has no removable front plate for closing the opening in the fan insertion opening of the fan casing, and therefore does not have a removable plate in the sense of the patent in suit, or equivalent to the front plate thereof.

Defendant's cleaner has no tubular extension and no element which performs the function of the cylindrical or tubular extension, which furnishes a tubular seat for the rotary valve in the patent in suit, without which with the tubular valve it would be impossible for the valve of the patent in suit to perform its function in both floor and off the floor work.

In defendant's cleaner the hose coupler never functions as a valve, it never coacts with the wall around the suction chamber and floor nozzle, but extends through a large opening in the front of the nozzle, and communicates directly with the eye of the fan which is formed in the integral front wall of the fan casing. The hose coupler is just like an ordinary hose coupler, a mere attachment, and when attached to a pipe it makes a one-way connection for the fluid, and when removed it does nothing.

The defendant's cleaner has no front plate with a tubular extension, and the nozzle is not the equivalent of the front plate with a tubular extension, of the patent in suit, for the reason that it does not function to hold a valve, or to furnish a seat for a valve.

The defendant's cleaner has no element which performs any of the functions of the tubular extension on the front plate of the patent in suit, as the hose coupling in the defendant's cleaner is connected directly to the eye in the integral front wall of the casing, and there is no connection between a hose and a valve, and the hose for off the floor work is not connected to the nozzle.

The removable cap in the patent in suit is on the valve, which is indispensable to the functioning of the cap, and is not connected to the tubular extension on the front plate.

The defendant's cleaner does not follow the patent in suit in its use of the removable cap, as the removable cap in the defendant's cleaner closes an opening formed in front of the nozzle, much larger than the hose coupler, through which the hose coupler can be inserted to the eye of the fan casing.

The defendant's cleaner has no frame which is the equivalent of the frame of the patent in suit, because in defendant's cleaner the motor housing is secured directly to an integral wall.

The defendant's cleaner has no valve at all and no valve chamber in the nozzle.

The defendant's cleaner has borrowed nothing from the patent in suit, and is a greater departure from the patent in suit than a mere change of form, as in it there is not found what I have determined to be the broadest novelty of the patent in suit, a valve and valve chamber, as a permanent part of the cleaner.

I find as conclusions of law:

That the defendant's cleaner does not infringe any of the claims of the patent in suit.

That the defendant is entitled to a decree against the plaintiff dismissing the bill of complaint with costs.

A decree may be entered in favor of the defendant against the plaintiff, dismissing the bill of complaint, with costs.

Settle on notice.

If this opinion is not considered a sufficient compliance with the rule requiring findings of fact and conclusions of law, then findings of fact and conclusions of law may be submitted.